## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RICHARD LEROY HAYES,

      Petitioner,

v.                                                                  Case No. 3:17-cv-1159-J-32PDB

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## **ORDER**

### I.   **Status**

Petitioner, Richard Leroy Hayes, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. See Doc. 1. He challenges a state court (Duval County, Florida) judgment of conviction for possession of a firearm by a convicted felon and possession of cocaine while armed, for which he is serving a cumulative twelve-year term of incarceration as a Habitual Felony Offender. See id. Respondents filed a Response. See Doc. 12.[1] And Petitioner filed a Reply. See Doc. 15. This case is ripe for review.

_____

[1] Attached to the Response are numerous exhibits. See Doc. 12-1 through Doc. 12-10. The Court cites to the exhibits as "Resp. Ex."

## II.   Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

> argued to the state supreme court or obvious in the
> record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's
> decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101
> (2011) (internal quotation marks omitted). "It bears
> repeating that even a strong case for relief does not
> mean the state court's contrary conclusion was
> unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>,
> 538 U.S. 63, 75 (2003)). The Supreme Court has
> repeatedly instructed lower federal courts that an
> unreasonable application of law requires more than
> mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v.
> Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at
> 75 ("The gloss of clear error fails to give proper
> deference to state courts by conflating error (even clear

> error) with unreasonableness."); <u>Williams v. Taylor</u>,
> 529 U.S. 362, 410 (2000) ("[A]n unreasonable
> application of federal law is different from an incorrect
> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the

performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.  As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   <u>Analysis</u>

**Ground One**

Petitioner argues his trial counsel was ineffective for failing to challenge the legality of the traffic stop that led to evidence being illegally seized from Petitioner's vehicle. Doc. 1 at 4. He contends that police conducted the stop and issued a citation for "improper parking within an intersection"; however, the conduct police stated they observed did not amount to such a violation. <u>Id.</u> at 5. As such, according to Petitioner, the police dismissed that traffic violation and thus, the resulting criminal charges should have also been dismissed.[2] <u>Id.</u>

Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief.[3] Resp. Ex. G at 4-7. The state filed a response to the claim, arguing the following, in relevant part:

> In the instant case, the Defendant was issued two traffic citations, to-wit: operating a motor vehicle without a safety belt in use (Florida Statute 316.614(4)(B) and improper parking within an intersection (Florida Statute 316.1945(1)(A)(3)). Neither of the traffic violations the Defendant received require another vehicle to be impeded or hindered as the Defendant argues in his Motion. The statute the

---

[2] Petitioner also argues trial counsel should have filed a motion to suppress. Doc. 1 at 4-5. The Court addresses Petitioner's claim regarding trial counsel's failure to file a motion to suppress in Ground Two.

[3] In his Rule 3.850 Motion, Petitioner also challenged the legality of the traffic stop based on officers' alleged racial profiling of Petitioner and that counsel should have obtained dash cam video footage. Resp. Ex. G at 5-6. Ground One of his Petition, however, is a more general attack regarding the legality of the stop based on the asserted traffic violations. Doc. 1 at 5.

Defendant references in his Motion, 316.2045, is directed at a pedestrian who impedes or hinders traffic. Thus, it is irrelevant that the arrest and booking report did not include the information that a car was impeded or hindered by the Defendant's vehicle and/or whether the defense attorney was surprised by that testimony. Furthermore, and contrary to the Defendant's allegation that the officers do not handle traffic enforcement and are members of a drug hit crew, Nobles testified that he is a sergeant in Zone 5 and addresses complaints from citizens, which can include drug complaints, but also includes many other types of complaints. Faulkner testified that he was assigned to a unit that targeted violent crime in Zone 5. Holtsman and Thompkins both testified that they were Zone 5 patrol officers.

During the trial, Sergeant Nobles testified that he came into contact with the Defendant based upon a traffic stop. Specifically, Nobles testified that he first saw the Defendant parked about one length away from a stop sign with a gentleman leaning into the passenger window and a car sitting behind him waiting for him to move out of the way. Nobles also testified that he noticed the Defendant was not wearing a seatbelt at the time. Nobles used a picture on Google map to explain the exact location of his vehicle and the Defendant's vehicle to the jury. Nobles also testified that Officer Faulkner was driving his patrol car directly behind him and as he passed the Defendant's vehicle, he notified Faulkner that the Defendant was not wearing a seatbelt and Faulkner confirmed that he also noticed the Defendant was not wearing a seatbelt. Based upon his observations, Nobles made a u[-]turn and as soon as the Defendant pulled in front of him, he turned on his blue lights to initiate a traffic stop. Nobles testified that the Defendant did not stop in a normal manner, which caused him to run up to the Defendant's vehicle door. When Nobles ran up to the Defendant's vehicle, he saw the Defendant moving what appeared to be a large clear plastic bag of crack cocaine from the cup holder

into the console. Nobles testified that as he was pulling the Defendant out of the car based upon the crack cocaine he had seen, Officer Holtsman alerted him to a gun in the vehicle. However, Nobles testified that until he saw the crack cocaine, it was going to be a normal traffic stop. Finally, Nobles testified that because he is a sergeant, he is issued a digital camera, which he used within one minute of the traffic stop to take photographs of the evidence.

Officer Faulkner testified that he was travelling behind Nobles when he saw the Defendant stopped in the roadway just before a stop sign and saw a guy leaning into the passenger side window of the Defendant's car. Officer Faulkner also testified that the Defendant was not wearing a seatbelt and confirmed that fact with Nobles. Faulkner testified that both he and Nobles turned their vehicles around to stop the Defendant and that at the time of the stop, he was right behind Nobles. Faulkner further testified that they reached the driver's side of the vehicle pretty much simultaneously and Nobles alerted him to drugs being present in the vehicle.

Next Officer Holtsman testified that he received a transmission that several officers were conducting a traffic stop. Holtsman stated that when he arrived at the scene of the traffic stop, he walked over to the passenger side and saw the Defendant attempt to kick a gun underneath the driver's seat on the floorboard and alerted the other officers. Similarly, Detective Thompkins testified that he received a radio transmission about a traffic stop and turned around to head to the stop. When he arrived at the traffic stop, he started to walk over to the passenger side of the Defendant's vehicle but heard Holtsman say there was a gun so he went to the driver's side of the vehicle. Thompkins testified that he saw the Defendant kicking the firearm.

During closing arguments, the defense attorney told the jurors that the officers pulled the Defendant out of the car because they thought he was going to run, which is illegal so they searched the car to find something to support the arrest. The State objected and the court sustained the objection with respect to the argument that the actions of the officers were illegal. The defense attorney also tried to argue that the Defendant was on trial for a false probable cause, which the court again sustained an objection for and called the attorneys to a sidebar conference. The court told the defense attorney that it was highly improper for her to argue to the jury that the arrest was illegal.

Based upon the traffic tickets that were issued, the facts as noted in the arrest and booking report and the testimony of the officers involved in the traffic stop and arrest of the Defendant, the defense attorney did not have any grounds to support the filing of a motion to suppress. Specifically, the only concern under the Fourth Amendment relative to a traffic stop is the validity of the basis asserted by the officer involved in the traffic stop and not the subjective motivations of the individual officers conducting the stop. Dobrin v. Florida Department of Highway Safety and Motor Vehicles, 874 So. 2d 1171, 1173 (Fla. 2004). Thus, a traffic stop is reasonable under the Fourth Amendment where a law enforcement officer has probable cause to believe that a traffic violation has occurred. State v. Thomas, 109 So. 3d 814, 817 (Fla. 5th DCA 2013), citing Whren v. United States, 517 U.S. 806, 810 (1996). The constitutional reasonableness of a traffic stop does not depend on the subjective motivation of the officer who stopped the vehicle. Id. and Whren at 813. The term traffic violation encompasses non-criminal and non-moving violations. State v. Arevalo, 112 So. 3d 529, 531 (Fla. 4th DCA 2013). Once a stop is made, an officer is justified in asking a driver to exit the vehicle for officer safety. Hatcher v. State, 834 So. 2d 314, 316 (Fla. 5th DCA 2003).

Since June 30, 2009, drivers may be stopped for not wearing a seatbelt even if it is the primary reason for the stop as opposed to a secondary action. <u>See</u> Section 316.614 (Florida Statutes 2009) and Laws of Florida 2009-32 (2009). Additionally, pursuant to Section 316.1945, a driver may be stopped for parking a vehicle on the roadway or within an intersection. Thus, the traffic stop of the Defendant was valid pursuant to two different statutes and the Defendant received traffic citations for both violations. An attorney is not ineffective for failing to make a meritless objection. <u>Lugo v. State</u>, 2 So. 3d. 1 (Fla. 2008). If the record conclusively refutes a factual basis for filing a motion to suppress, it is not ineffective assistance of counsel to fail to file a motion to suppress. <u>Jackson v. State</u>, 640 So. 2d 1173 (Fla. 2nd DCA 1994). Furthermore, if case law demonstrates that a motion to suppress evidence would not have been successful, then a claim of ineffective assistance of counsel fails. <u>Ramos v. State</u>, 559 So. 2d 705 (Fla. 4th DCA 1990). Because the Defendant has failed to demonstrate that a motion, even if filed, would have been successful in light of the evidence in the case, the Defendant has failed to show he has suffered any prejudice due to counsel's failure to file a motion to suppress. <u>Gettel v. State</u>, 449 So. 2d 413, 414 (Fla. 1984) and <u>State v. Freeman</u>, 796 So. 2d 574, 578 (Fla. 2nd DCA 2001). Post-conviction relief is properly denied where the record rebuts a defendant's claim of ineffective assistance. <u>Ferrell v. State</u>, 29 So.3d 959, 971 (Fla. 2010). Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground (A)1 regarding either a legal deficiency, or prejudice, in his attorney's failure obtain a dash cam video that did not exist and failure to challenge the traffic stop, the State suggests this honorable court may summarily deny Ground (A)1 of the Defendant's Motion based upon the record provided by the State and the arguments contained within this Response, without holding an evidentiary hearing.

Resp. Ex. G at 20-25 (record citations omitted). The trial court then summarily

denied Petitioner's claim, finding the following:

> The Court finds that the facts alleged in the
> Response to Defendant's Motion for Post-Conviction
> Relief filed by the State of Florida, and the record
> excerpts attached thereto, are true and correct. The
> Court also adopts the legal conclusions reached by the
> State, and for the reasons asserted therein, it is,

**ORDERED AND ADJUDGED:**

1. Defendant's pro se Motion for Post-Conviction Relief
   is hereby **DENIED**.

Id. at 154-55. Petitioner appealed, Resp. Ex. H, and the First District Court of

Appeal per curiam affirmed the trial court's denial without a written opinion,

Resp. Ex. J. Assuming the First DCA affirmed the denial on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications.

A traffic stop is a seizure within the meaning of the Fourth Amendment.

Whren v. United States, 517 U.S. 806, 809-10 (1996). To comply with the Fourth

Amendment, the officer must have reasonable suspicion to conduct the traffic

stop. Heien v. North Carolina, 574 U.S. 54, 60 (2014) ("All parties agree that to

justify [a traffic stop], officers need only reasonable suspicion"). That is, the

officer must have "a particularized and objective basis for suspecting the person

stopped of criminal activity." Navarette v. California, 572 U.S. 393, 396 (2014).

"Criminal activity includes even minor traffic violations." United States v.

Campbell, 970 F.3d 1342, 1351 (11th Cir. 2020) (holding "a rapidly blinking turn signal provided [officer] with reasonable suspicion to believe that [the defendant's] car was in violation of the traffic code"; and thus, the traffic stop was lawful). In addition, officers are "entitled to seize evidence revealed in plain view in the course of the lawful stop" and to arrest passengers of a motor vehicle "when evidence discovered in plain view [gives] probable cause to believe the passenger[s] ha[ve] committed a crime . . . ." United States v. Hensley, 469 U.S. 221, 235 (1985) (citing Texas v. Brown, 460 U.S. 730 (1983)).

Here, Sergeant Nobles, an officer who was previously on the sheriff's office narcotics task force, testified that he was patrolling Zone 5 when he saw Petitioner in the driver's seat of a vehicle that was stopped in the middle of the street. Resp. Ex. B at 197-204. Nobles stated a pedestrian was leaning into Petitioner's passenger side window. Id. at 203-04. Nobles immediately noticed Petitioner was not wearing a seatbelt and radioed Officer Faulkner, who was following Nobles, and Faulkner confirmed Petitioner did not have on a seatbelt. Id. at 204. Nobles then initiated a traffic stop and radioed for officer assistance because once he was behind Petitioner, Petitioner rapidly accelerated before pulling into a nearby driveway. Id. at 203. Nobles exited his police cruiser and approached Petitioner's vehicle and when he was within "touching" distance, he looked inside the vehicle's open window and saw Petitioner moving a large, clear bag of crack cocaine from the cup holder to the center console. Id. At that

time, Officers Thompkins, Faulkner, and Holtsman arrived at the scene. Id. Faulkner walked up behind Nobles, and Holtsman walked up to the passenger side of the vehicle. Id. Nobles signaled to the other officers that there were drugs in the vehicle before asking Petitioner to step out of the car. Id. at 214-15. Petitioner voluntarily opened his car door to exit, but "tensed up" before he got out. Id. At that time, Holtsman notified the other officers that there was a firearm in the car. Id. Nobles and Faulkner then grabbed Petitioner and handcuffed him. Id. at 215. Holtsman testified that when Petitioner first opened his door to get out of the car, he saw a gun lying on the driver's side floorboard, and that Petitioner was attempting to kick the gun further under the seat. Id. at 271.

Operating a vehicle without a safety belt is a violation of Florida Statute section 316.614(4)(B). Because Petitioner was violating this traffic statute, the initial traffic stop was lawful. Further, once the officers conducted the lawful stop, "they were authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain status quo during the course of the stop." Hensley, 469 U.S. at 684. In the course of the stop, officers saw drugs and a firearm suggesting that Petitioner was engaged in illegal activity and giving the officers probable cause to arrest Petitioner and subsequently seize the items. See, e.g., id. (holding that "police were entitled to seize evidence revealed in plain view in the course of lawful stop, to arrest . . . passenger when

evidence discovered in plain view gave probable cause to believe passenger had committed a crime, . . .  and subsequently to search the passenger compartment . . . because it was within passenger's immediate control.").

Based on this evidence, trial counsel was not deficient for failing to raise a meritless argument challenging the traffic stop or the subsequent seizure of the cocaine and firearm. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance"). Accordingly, upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court.  See 28 U.S.C. § 2254(d). Ground One is due to be denied.

**Ground Two**

Petitioner argues his trial counsel was ineffective for failing to file a pre-trial motion to suppress the cocaine because it was the product of an illegal search of his vehicle. Doc. 1 at 6. According to Petitioner, even assuming the initial traffic stop was proper, officers lacked probable cause to believe that Petitioner possessed drugs, and thus, could not have searched Petitioner's

vehicle without his consent. Id. He asserts that officers "pulled" him out of his car because they thought Petitioner was going to run; however, Petitioner avers such action is illegal and they "searched Petitioner's car to find something to support the arrest." Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. G at 7-11. The state responded, arguing in pertinent part:

> Once a driver is lawfully stopped for a traffic violation, an officer is authorized to order him out of the vehicle. Reid v. State, 898 So. 2d 248, 249 (Fla. 4th DCA 2005). In the Beard case, the officer stopped the defendant for speeding, asked him to step out of the vehicle and noticed a white powdery substance on the front seat which he believed to be cocaine. Beard v. State, 548 So. 2d 675, 676 (Fla. 5th DCA 1989). The appellate court held that once the officer saw the substance he believed to be cocaine in plain view in the vehicle, the officer had the right to arrest and search incident to arrest. Id. In the case sub judice, as noted in Ground [(A)](1) above, Sergeant Nobles testified that he saw the Defendant stopped about one length away from a stop sign with a gentleman leaning into the passenger window with a car waiting for him to move out of the way. Nobles also testified that the Defendant was not wearing a seatbelt. . . . Thus, Nobles had probable cause to believe a traffic violation had occurred. . . . . [And] when an officer stops a vehicle for a violation of a traffic law, probable cause is present for the stop. . . . .
>
> Once the Defendant's vehicle was lawfully stopped, each officer testified as to what they saw in terms of the crack cocaine and the firearm being located inside the vehicle. Specifically, Nobles testified when he got to the window of the Defendant's vehicle, he looked in and the Defendant was in the process of

15

moving what appeared to be a large bag of crack cocaine from the cup holder and putting it ***inside*** the center console. Nobles also testified that once the Defendant moved the cocaine from the cup holder to inside the console, the Defendant closed the lid of the console. Thus, Nobles['] testimony was consistent with the testimony of Faulkner and Thompkins, who both testified that the cocaine was inside the closed console when they arrived at the Defendant's vehicle. Nobles further testified that at that point he knew he had felony charges on the Defendant for the cocaine. Finally, and contrary to the Defendant's conclusory and speculative allegation that his attorney should have obtained Nobles' dash cam video, Nobles testified that he was only issued a digital camera, which he used within one minute of the traffic stop to take photographs of the evidence. When the State initially moved the crack cocaine into evidence, the defense attorney objected based upon the State failing to lay a proper foundation and chain of custody. However, the State was able to lay a proper foundation and the crack cocaine was admitted over the defense attorney's objection. After Officer Holtsman testified, the defense attorney renewed her motion to suppress the cocaine based upon the officer's testimony that the console was closed at the time he approached the vehicle. The court denied the defense attorney's motion to suppress.

. . . .

Because the Defendant has failed to demonstrate that a motion, even if filed, would have been successful in light of the evidence in the case, the Defendant has failed to show he has suffered any prejudice due to counsel's failure to file a motion to suppress. . . . In the case sub judice, as noted above, the record conclusively refuted the Defendant's claim that his attorney was ineffective for failing to file a motion to suppress either the cocaine in plain view, or the firearm subsequently located under the driver's seat, as both were inside the lawfully stopped vehicle.

16

Resp. Ex. G at 25-28. The trial court adopted the state's legal conclusions and summarily denied Petitioner's claim. Id. at 154-55. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. J. Assuming the First DCA affirmed the denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

As explained in Ground One, the cocaine and the firearm were in plain view during the lawful traffic stop; and thus, officers had probable cause to believe Petitioner was committing a crime, and probable cause to arrest Petitioner and subsequently conduct a search of his vehicle. See Hensley, 469 U.S. at 684. Trial counsel was not deficient for failing to file a meritless motion to suppress the cocaine and/or firearm. See Diaz, 402 F.3d at 1142. As such, upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Two is due to be denied.

**Ground Three**

Petitioner argues his trial counsel was ineffective for failing to "prepare and file a pre-trial motion to depose" state witness Faulkner. Doc. 1 at 8.

According to Petitioner, had counsel properly prepared for this witness, she would have been able to impeach Faulkner's trial testimony that he was the officer who "submit[ted] the gun into property," because the property storage card clearly showed that it was Holtsman who provided the gun to the evidence custodian. Id. Petitioner asserts that had counsel highlighted inconsistencies in Faulkner's trial testimony, he would have been found not guilty of the possession of a firearm charge and would not have been found guilty of possession of cocaine while armed. Id.

In his Rule 3.850 motion, Petitioner made a general argument that his trial counsel was ineffective for failing to use depositions to impeach the officers during trial. Resp. Ex. G at 11-12. The state responded to the claim, explaining in relevant part:

> This is the same argument that the Defendant presented to the court during his sentencing hearing. Specifically, he argued that his attorney never requested to take depositions and that she did not cross examine the officers regarding the inconsistencies in the police report.
>
> In the instant case, the State called four police officers as witnesses during the Defendant's trial, to-wit: Sergeant J.C. Nobles, Officer J.M. Faulkner, III, Officer F.R. Holtsman and Officer G.G. Thompkins. Of those witnesses, Officer Thompkins wrote the arrest and booking report and Officers Nobles, Faulkner and Holtsman were discussed in the report. Additionally, Officer Faulkner wrote the two traffic tickets. Finally, the officers were also listed on the State's initial discovery. An attorney is not ineffective for failing to

depose a witness if he or she knows what the witness is going to testify to based upon reports and statements and there is no reason for the attorney to believe the witnesses would change their testimony. At the sentencing hearing on June 25, 2013, the defense attorney told the court that she explained to the Defendant that a deposition and an arrest and booking report are both a sworn statement; therefore, she decided not to depose the officers. The defense attorney further stated that she was very clear on what the officers were going to testify to and there were no surprises during the trial regarding their testimony. Finally, the defense attorney noted that there were certain questions that the Defendant wanted her to ask when questioning some of the officers during the trial, but the rules of evidence did not allow her to ask the questions. However, she did address the inconsistencies between the officers' testimony. In fact, the defense attorney's cross examination of each officer that testified was lengthy and detailed and several inconsistencies were pointed out to the jury. Thus, the Defendant's uncorroborated and unsupported conclusory allegation that his attorney should have deposed the officers does not establish prejudice because it fails to establish that the attorney would have discovered unknown information had [s]he deposed the witness. Ferrell v. State, 29 So. 3d 959, 969 (Fla. 2010) and Davis v. White, 928 So. 2d 1089, 1117 (Fla. 2005), citing Brown v. State, 846. So. 2d 1114, 1124 (Fla. 2003). Merely alleging that a deposition would have revealed a number of reliability and impeachment issues is insufficient to demonstrate prejudice. Ferrell at 969.

Although an attorney can always be second-guessed for not doing more, such as deposing a witness in the hopes the witness will deviate from the previously provided written and recorded statement, such speculation is not the standard by which counsel's performance is to be evaluated under Strickland. Kilgore v. State, 55 So. 3d 487, 500 (Fla. 2010). When a

> defendant fails to establish prejudice resulting from an attorney's decision not to depose a witness, the outcome of the trial is not undermined and the claim is without merit. <u>Ferrell</u> at 969. Without a showing of prejudice, a defendant's claim of ineffective assistance of counsel cannot be successful. <u>McCoy v. State</u>, 598 So. 2d 169, 172 (Fla. 1st DCA 1992). Therefore, Defendant's allegation fails as the Defendant has failed to demonstrate a legal deficiency or prejudice.

Resp. Ex. E at 12-14. The trial court adopted the state's legal conclusions and summarily denied Petitioner's claim. <u>Id.</u> at 154-55. Petitioner filed a motion for rehearing arguing that trial counsel should have impeached Faulkner using the property storage card.[4] <u>Id.</u> at 162, 177. The trial court denied the motion for rehearing, <u>see</u> <u>id.</u> at 166, and Petitioner argued this fact during his postconviction appeal, <u>see</u> Resp. Ex. H. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. J. Assuming the First DCA affirmed the denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

     As the state noted in its response, during Petitioner's sentencing hearing, Petitioner argued he was not able to conduct pre-trial depositions. Resp. Ex. A at 199. His trial counsel explained to the trial court that she considered

---

[4] Respondents argue that Petitioner failed to present this sub-claim to the trial court, and thus, it is unexhausted. Resp. at 29-30. Respondents, however, fail to acknowledge this claim was raised in Petitioner's motion for rehearing.

deposing the officers but made a strategic decision to not do so. Id. at 205. She

made the following statement:

> I did indicate to Mr. Hayes that a deposition is a sworn
> statement, an arrest and booking report narrative is a
> sworn statement, and that the police would testify to
> what was in the sworn statement and that could be
> used to impeach them. I did make the decision not to
> depose the officers. That was my decision to be made,
> and I felt it necessary, and I was very clear on what the
> officers were going to testify to. And much of what they
> said, there were no real surprises in trial.

Id. Further, during trial counsel's cross-examinations of the officers, she

challenged Nobles' credibility about the location of all the officers during the

traffic stop, Resp. Ex. B at 232-35; elicited testimony from Faulkner that he did

not see any cocaine or a firearm until after Petitioner's arrest, see id. at 259;

and highlighted that Holtsman also did not see the cocaine until after

Petitioner's arrest, see id. at 279. Trial counsel also questioned Thompkins at

length regarding the contents of the arrest and booking report and the

inconsistencies between the report and the evidence produced at trial. Id. at

303-07. As such, "the challenged action might be considered sound trial

strategy"; and Petitioner has failed to demonstrate deficient performance.

Strickland, 466 U.S. at 689.

In addition, even assuming trial counsel was deficient in failing to

impeach Faulkner with the property storage card after he testified that he

submitted the firearm to the property custodian, Petitioner cannot demonstrate

21

the necessary prejudice under <u>Strickland</u>. Although the subject property storage card for which Petitioner relies provides that the "Submitting Officer" of the firearm was Holtsman, <u>see</u> Resp. Ex. G at 177, the name of the "Reporting Officer" was redacted, and thus, Faulkner's participation in transferring custody of the firearm to the property custodian cannot be entirely excluded. Also, assuming trial counsel did impeach Faulkner with the property storage card, Petitioner fails to argue or demonstrate that the state would have been prohibited from presenting the firearm as evidence during Holtsman's trial testimony. As such, Petitioner has failed to show that but for trial counsel's alleged failure, the outcome of his trial would have been different. Accordingly, upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Three is due to be denied.

**Ground Four**

Petitioner argues that the postconviction court erred in failing to allow Petitioner an opportunity to amend his Rule 3.850 motion before summarily denying his claims. Doc. 1 at 10. He also claims that the postconviction court failed to attach to its order relevant portions of the record supporting its summary denial. <u>Id.</u>

Petitioner's claims that the state court made errors in his postconviction proceedings solely addresses Florida law and does not include any federal constitutional infirmity. Such claims that do not present a constitutional challenge to the validity of Petitioner's judgment and sentence are not cognizable on federal habeas review. See Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (argument that the state court failed to attach relevant portions of the record to refute Rule 3.850 motion does not undermine validity of the petitioner's conviction, and thus, does not state a basis for habeas relief); see also Rolack v. Jones, No. 15-CV-22270-WILLLIAMS, 2016 WL 10707030, at *27 (S.D. Fla. Nov. 2, 2016) (holding the petitioner' claim that state postconviction court failed to allow him leave to amend his Rule 3.850 motion not cognizable on § 2254 habeas review). As such, Ground Four is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of

appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[5]

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of December, 2020.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Richard Leroy Hayes, #J23838
      Holly Noel Simcox, Esq.

---

[5] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.